## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **(1) IMOGENE HERNDON,** as Special Administrator of the Estate of Butch Thomas Herndon, deceased, <br><br> **Plaintiff,** <br><br> vs. <br><br> **(1) CITY OF CLINTON, OKLAHOMA,** **(2) PAUL RINKEL,** individually and in his official capacity as the Chief of Police for Clinton, Oklahoma **(3) SHANE HARRELSON,** **(4) PETER PORCHER,** **(5) LACEY HULETT,** **(6) CARTER SCOTT, and** **(7) SINOR EMERGENCY MEDICAL SERVICE, INC.,** <br><br> **Defendants.** | **CASE NO.** CIV-23-86-F |

## <u>COMPLAINT</u>

COMES NOW Plaintiff Imogene Herndon, as Special Administrator for the Estate of Butch Thomas Herndon, deceased, for her cause of action against Defendants City of Clinton ("Clinton"), Paul Rinkel ("Rinkel"), Shane Harrelson ("Harrelson"), Peter Porcher ("Porcher"), Lacey Hulett ("Hulett"), Carter Scott ("Scott"), and Sinor Emergency Medical Service, Inc. ("Sinor") alleges and states as follows:

## <u>JURISDICTION, VENUE, AND PARTIES</u>

1.  At all times material hereto, Butch Herndon was a citizen and resident of Custer County

2. Plaintiff Imogene Herndon is a citizen and resident of Clinton and was appointed the Special Administrator for the Estate of Butch Thomas Herndon in Custer Count Case No. PB-2022-66 on December 1, 2022.

3. All of the acts complained of occurred in the Western District of Oklahoma and each of the defendants is capable of being served within the Western District.

4. This court has jurisdiction over the parties hereto and the subject matter hereof.

5. Defendant Rinkel, at all times relevant to the claims alleged herein, was a citizen of the State of Oklahoma and Chief of Police for the City of Clinton. Rinkel engaged in the conduct complained of under color of law and in the scope of his employment with the City of Clinton. As the Chief of Police, Rinkel is the final policymaker for matters of law enforcement in the City of Purcell, as set out in the City Ordinances of the City of Clinton §1-8B-1. Rinkel has the authority to train, supervise, monitor, and discipline officers under his command. Defendant Rinkel is sued in both his individual and official capacity. Rinkel was responsible for ensuring that all officers, including Defendants Harrelson, Porcher, Hulett, and Scott, were adequately trained in regards to exercising the necessary force to accomplish an arrest and identifying and interacting with intoxicated, physically ill and/or mentally ill/unstable members of the community.

6. At all times material hereto, the City of Clinton was a municipality and political subdivision located in Custer County and was responsible for the operation of the Clinton Police Department, its law enforcement officers, and the Clinton City Jail. As such, Clinton may sue or be sued by name and has the authority to employ law enforcement officers, appoint a police chief, operate the city jail, and delegate to the police chief final policy and decision-making authority regarding law enforcement matters for the City of Clinton. At all times relevant to the allegations herein, Clinton was the employer of Defendants Rinkel,

Harrelson, Porcher, Hulett, and Scott. In the alternative to paragraph 5, above, the City of Clinton maintains supervisory responsibilities and control over the City of Clinton Police Department through the City Manager.

7. Defendant Harrelson was, at all relevant times, a sworn Clinton Police Officer, employed by and working for Defendant Clinton. Defendant Harrelson engaged in the conduct complained of under color of law and in the scope and course of his employment with Defendant Clinton.

8. Defendant Porcher was, at all relevant times, a sworn Clinton Police Officer, employed by and working for Defendant Clinton. Defendant Porcher engaged in the conduct complained of under color of law and in the scope and course of his employment with Defendant Clinton.

9. Defendant Hulett was, at all relevant times, a sworn Clinton Police Officer, employed by and working for Defendant Clinton. Defendant Hulett engaged in the conduct complained of under color of law and in the scope and course of his employment with Defendant Clinton.

10. Defendant Scott was, at all relevant times, a sworn Clinton Police Officer, employed by and working for Defendant Clinton. Defendant Scott engaged in the conduct complained of under color of law and in the scope and course of his employment with Defendant Clinton.

11. Defendant Sinor is an emergency medical services provider, who was responsible for providing emergency medical care during the events described herein. Defendant Sinor is not a governmental entity and was not acting as a state actor at the time of the events described herein.

## COMPLIANCE WITH THE OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT, 51 O.S. §§ 151, *et seq.*

12. Plaintiff timely complied with all requirements and obligations pursuant to the Oklahoma Governmental Tort Claims Act before filing this lawsuit.

13. The required notice of Plaintiff's tort claim was sent to Defendant Clinton, via certified mail, on May 6, 2021. The notice was received and signed for by Clinton on May 9, 2022.

14. Plaintiff's tort claim was deemed denied on August 7, 2022.

15. Plaintiff is now filing this lawsuit within 180 days of that deemed denial.

## FACTUAL BACKGROUND

### *Arrest of Butch*

16. On August 31, 2021, Butch Herndon was arrested by the Clinton Police Department for public intoxication.

17. At approximately 12:15 p.m., Defendants Rinkel, Hulet, Porcher, Scott, and Harrelson all responded to the call complaining of Butch's behavior.

18. It was extremely hot out that day, with temperatures in excess of 90 degrees.

19. Butch was not acting violently prior to or during his arrest by Defendants.

20. Defendant Rinkel was the first officer on the scene and first officer to make contact with Butch.

21. Rinkel saw Butch standing on the side of the road and stopped his patrol car. He ordered Butch to get on the ground and Butch immediately complied and even placed his hands behind his back before ordered to do so.

22. Butch did not in any way attempt to evade or resist Rinkel placing handcuffs on Butch.

23. Defendants Porcher and Scott then took control of Butch, but Rinkel remained present at the scene of the arrest during the entire time the following events unfolded.

24. At this time, Butch told Defendants Scott and Porcher that he was dehydrated. Defendant Rinkel heard that statement as well.

25. Butch complied with all orders given to him, answered the questions asked of him, and was in no way physically or verbally hostile or threatening to any officer or person on the scene and made no attempts to escape or resist arrest.

26. Defendant Scott recognized that Butch was extremely sweaty and asked Butch why he was so sweaty, to which Butch replied that he broke a fever. Scott acknowledged that he had heard about Butch's fever the day before when Butch was at the Clinton City Jail.

27. Butch also informed Defendant Scott that he got high "just earlier" and had been walking all day.

28. Butch calmly and compliantly stood with Scott, even standing completely still at the door to the backseat of the patrol car while Scott got the keys and unlocked the door.

29. Porcher and Scott placed Butch into the backseat of their patrol car with handcuffs on and without incident, while they remained at the scene talking to other officers and witnesses.

30. Scott made sure at this point to tell Defendant Rinkel that Butch had Hepatitis C, to which Rinkel responded "Lovely. I know he's sweating all over everything."

31. After placing Butch in their patrol car, Porcher and Scott explicitly discussed that Butch was intoxicated, had glassy eyes with dilated pupils, was unsteady on his feet, had slurred and erratic speech, and did not smell of alcohol.

32. A few minutes after Butch was placed into the car, Porcher opened the door and pulled Butch, who was lying on his back in the backseat, up into a sitting position while yelling at him.

33. Butch specifically asked Porcher to take him to the emergency room.

34. Instead, Porcher pulled Butch out of the backseat of the car and threw him on the ground, while still handcuffed and not doing anything to evade arrest or pose a threat to anyone.

35. After Butch's death, described below, Defendants Porcher and Scott wrote false police reports claiming that Butch had been kicking the cage in the backseat of the patrol car and that when officers opened the door, Butch used his legs to lunge out of the vehicle and onto the ground, despite officers purportedly trying to catch him.

36. Despite Butch being handcuffed and laying or sitting on the ground, Porcher and Scott continued to alternate between slamming Butch to the ground, pulling him back up to sit up, and pushing him down on the ground in a manner which knowingly restricted his ability to breathe, including repeatedly placing him in a prone position with knees and bodyweight on his neck, back, legs, and side.

37. All the while, officers knew and could see and hear that Butch was vomiting repeatedly on top of the other observed and explicitly discussed symptoms Butch was having.

38. Defendant Rinkel was present and standing right near the vehicle and Defendant Porcher when Porcher slammed Butch down face first into the curb and pavement and watched his subordinate officers repeatedly slam Butch on the ground in a prone position and put their bodyweight on his back, neck, legs, and side while Butch was vomiting and struggling to breathe.

39. Butch was audibly struggling to breathe during these repeated uses of unnecessary force and continued vomiting and heaving, having fecal incontinence, and his face began losing color and his lips taking on a purplish hue.

40. Despite Butch's condition and despite the fact that he posed no threat of escape nor harm to any person while still handcuffed, Porcher and Scott continued to repeatedly exert unnecessary force on Butch, still repeatedly alternating between throwing him on the ground, pulling him back up to sit up, and pushing him down on the ground with knees and bodyweight on his neck, back, and legs, making it harder for Butch to breathe.

41. These repeated unnecessary and excessive uses of force went on for approximately 15 minutes despite their knowledge of Butch's serious and obvious need for emergency medical care.

### Butch's Condition Obviously Declined at the Scene of Arrest

42. As this continued, Butch continued to be extremely sweaty, continued vomiting repeatedly, was audibly struggling to breathe, continued suffering fecal incontinence while being manhandled by officers for no purpose, and repeatedly requested to be taken to the hospital.

43. Defendants Rinkel, Scott, Porcher, Harrelson, and Hulett observed and were aware of these readily apparent signs that Butch was overdosing on drugs or severely physically ill.

44. Defendants Rinkel, Scott, Porcher, Harrelson, and Hulett were aware that Butch had stated he was dehydrated and had broken a fever.

45. Defendants Rinkel, Scott, Porcher, Harrelson, and Hulett's observations of Butch made each of Defendants Rinkel, Scott, Porcher, Harrelson, and Hulett aware that there was a substantial risk that Butch was suffering from a drug overdose or was severely physically ill, as they could see and hear him vomiting and heaving, knew he was struggling to breathe, and knew he was having fecal incontinence.

46. Defendants Rinkel, Scott, Porcher, Harrelson, and Hulett were aware that there was a substantial risk to the health and safety of Butch.

47. Despite Defendants Rinkel, Scott, Porcher, Harrelson, and Hulett's subjective knowledge and awareness of Butch's objectively serious symptoms, Defendants Rinkel, Scott, Porcher, Harrelson, and Hulett did not seek appropriate medical attention for Butch by having him taken to the hospital.

### *Butch is Denied Medical Care at the Scene of the Arrest*

48. During the continued manhandling of Butch, Defendant Rinkel acknowledged that Butch was intoxicated and in need of medical care, issuing an order to call for EMTs - Defendant Sinor's employees - to the scene.

49. Officers, including Defendant Rinkel asked Butch what he had taken. Chief Rinkel even stated that it was important for Butch's health that he tell them what he took.

50. Before EMTs arrived, Butch told Defendants Rinkel, Scott, and Porcher, that he had taken narcotics that day.

51. Even after the call for an ambulance, Defendants Porcher and Scott continued to exert unnecessary and excessive force on Butch, continuing to slam him to the ground, put him in the prone position with bodyweight on his neck, back, legs, and side, then sitting him up so the whole process could begin again.

52. Butch attempted to move so he could breathe and get off of the hot pavement, which could be as hot as 140 degrees when the temperature outside is 95 degrees, and Defendant Scott unnecessarily, excessively, and with disregard for all of the obvious and serious signs of Butch's medical distress pushed Butch's head down into the grass next to the road.

53. At this point, while struggling to breathe, Butch again asks to be taken to the hospital.

54. Defendant Scott responded by pushing Butch back down on the ground harder with his bodyweight and yelling at Butch not to move.

55. At this point, Defendant Hulett arrived on the scene and witnessed Butch's severe and obvious condition and the unnecessary uses of force against Butch.

56. Hulett did nothing to stop the excessive use of force taking place in front of her.

57. Hulett repeatedly stood on Butch's legs while he was in the prone position with a knee in his back or neck.

58. At this point, Defendant Sinor's employees approached Butch, and Defendant Porcher told them that the officers needed Butch cleared before they could take him to the jail because he projectile vomited.

59. Porcher specifically did not tell the EMTs that Butch was dehydrated, was intoxicated, had glassy eyes with dilated pupils, was unsteady on his feet, had slurred and erratic speech, had been vomiting for several minutes, was having fecal incontinence, had repeatedly requested to go to the hospital, or that Butch had admitted to taking narcotics earlier that day.

60. This deliberate withholding of serious information from Defendant Sinor's EMTs deprived them of full knowledge and capability to assess, evaluate, provide emergency medical treatment at the scene, or to take Butch to the hospital at that time.

61. Instead, Porcher just told the EMTs that they needed his vitals checked so they could clear him to take him to the jail.

62. Defendant Sinor's employees placed a blood pressure cuff on Butch but were unable to get a reading as Butch moved, again presenting no threat of harm to anyone, and Defendant Scott again slammed Butch down to the ground and pushed his head down into the grass while also putting his knee and bodyweight on Butch's upper back, making it hard for Butch to breathe.

63. Butch tried to lift his head to breathe, but Defendant Scott continued to hold Butch's head down while Defendants Hulett and Porcher stood on Butch's legs.

64. Finally Butch is sat back up, with Defendant Scott pushing Butch's head forward and down.

65. Defendant Sinor's employees again put a blood pressure cuff on Butch and also placed a pulse meter on his finger. While medics were trying to get these readings, Defendant Scott continued to forcefully push Butch's head forward and down.

66. Butch then yells that "You all are going to kill me."

67. While Defendant Sinor's employees were pumping up the blood pressure cuff, Defendant Scott forcefully pushed Butch's head down nearly into his own lap, and Butch could be heard struggling to breathe.

68. Butch attempted to move so he could breathe, again posing no threat of harm to anyone, and Defendant Scott again slams Butch's face down into the grass and places his knee and bodyweight on Butch's back and neck.

69. This disrupted Defendant Sinor's employees from being able to finish checking Butch's vitals.

70. Despite their knowledge that Defendant Sinor's employees were unable to check Butch's vital signs, Defendants Porcher, Scott, Rinkel, and Harrelson made a deliberate – even discussing the matter – decision not to take Butch to the hospital for treatment or to be cleared to be taken to the jail.

71. Defendant Rinkel asked if they should take Butch to the hospital given his condition. Each of Defendants, Porcher, Scott, and Harrelson heard the question from Defendant Rinkel.

72. Despite Butch's known intoxication on drugs, and his obviously deteriorating condition indicating a drug overdose or severe physical illness, Defendants Porcher and Harrelson said that Butch did not need to go the hospital and that if they took him there - he would just destroy a hospital room.

73. This statement was made even though Butch had not been violent, aggressive, or disorderly throughout the entire encounter.

74. Chief Rinkel stood right there and acquiesced to the decision to not take Butch to the hospital despite his obvious signs of drug overdose and acquiesced to the reasons given by Defendants Porcher and Harrelson for not taking Butch to the hospital. So, too, did Defendants Scott.

75. Butch was still audibly struggling to breathe and Porcher and Scott continued to hold him down with their bodyweight on him.

76. While being held down, Butch began vomiting more and his body was moving back and forth as he heaved with increasing intensity.

77. Defendant Scott, during this vomiting episode, continued to push Butch down into the ground with his knee on Butch's back and his hands holding Butch's shoulder down, telling Butch to stay on his stomach.

78. Defendant Porcher stated that "With how much has come up [during Butch's vomiting], I don't know how much he's got left in there." Later at the jail, Defendant Porcher would describe it as Butch having vomited in the amount of two liters.

79. Defendant Sinor's employees then removed the blood pressure cuff and pulse meter.

80. At one point during this time, Defendant Scott unnecessarily threw Butch down so hard on the hot asphalt road that Defendant Porcher actually warned him not to bust Butch's head open on the pavement. But neither Defendants Porcher, Harrelson, nor Rinkel took any effort to stop the unnecessary force and abuse.

81. Defendant Rinkel then placed leg shackles on Butch, despite having had them on scene the entire time, while Defendant Scott continued to hold Butch's face down on the extremely hot pavement which temperatures are estimated at 140 degrees.

82. Butch then defecated himself again and Defendants Porcher and Scott were aware of it, groaning after it happened. Defendant Scott was still forcibly holding Butch's head down to the ground at this point.

83. While Defendant Scott was still holding Butch down on the hot pavement, Butch struggled to speak but asked for water and saying "Please. It's hot."

84. Defendants Porcher, Scott, Harrelson, Hulett, and Rinkel had all seen Butch's serious condition with obvious signs of drug overdose and/or severe physical illness, and knew that Butch was in such a condition that he needed to be medically cleared before he could be taken to the jail.

85. Butch's condition was so severe and obvious at this point that a reasonable officer in Defendants Rinkel, Scott, Porcher, Harrelson, and Hulett's position would have sought medical attention for Butch despite the incomplete attempt at an examination by employees of Defendant Sinor.

86. Defendants Rinkel, Scott, Porcher, Harrelson, and Hulett posess specialized knowledge, as law enforcement officers, of the symptoms and typical duration of drug overdose and/or physical illness that was severe and would require medical attention.

87. In the alternative, Defendants Scott, Porcher, Harrelson, and Hulett should have been trained to possess specialized knowledge, as law enforcement officers, of the symptoms and typical duration of drug overdose and/or physical illness that would require medical attention, given the highly common occurrence of officers encountering citizens on drugs and/or experiencing drug overdose.

88. Defendants Rinkel, Scott, Porcher, Harrelson, and Hulett's decision not to seek medical care was not because Butch's symptoms were not obvious and severe, nor the result of Defendants Rinkel, Scott, Porcher, Harrelson, and Hulett's lack of subjective awareness of Butch's need for medical attention, but instead was the result of Defendants Rinkel, Scott, Porcher, Harrelson, and Hulett's conscious disregard of Butch's severe and obvious medical crisis and their disgust that Butch was known to have Hepatitis C.

89. The words and actions of Defendants Porcher, Scott, Rinkel, Harrelson, Hulett, and Butch are recorded with audio on the officers' body cameras and dashboard cameras.

### *Butch is Taken to Jail Rather than Provided Necessary Medical Care*

90. Rather than take Butch to the hospital for his dire and obvious condition, Rinkel, Porcher, Scott, Harrelson, and Hulett made the decision to take Butch to the Clinton City Jail where there are no full-time medical providers and no medical equipment for treating inmates with obvious and severe symptoms of drug overdose.

91. As Defendants Porcher and Scott got Butch up to place him in their car, Defendant Harrelson asks Butch "What'd you take man?"

92. Butch's condition was so seriously and obviously deteriorating that, at the time officers put him in the car to take him to the jail instead of the hospital, Butch was unable to move under his own effort and instead officers picked Butch up and stuffed him into the backseat of the patrol car, with his legs folded under him, as if he were an inanimate object and not a living human being in obvious, serious medical distress.

93. By the time Defendants Porcher and Scott put Butch in the car, his face was pale and his lips were purple – obvious signs of medical distress on top of the other obvious signs of medical distress Butch had been exhibiting.

94. Fire paramedics who had been on the scene since Defendant Sinor's employees arrived, asked Defendant Porcher if they needed any help with Butch at the jail, to which Defendant Porcher said "We've got enough. We're okay."

95. Employees of Defendant Sinor, knowing they were unable to clear Butch medically, offered to follow officers back to the jail to tend to Butch due to his condition.

96. Defendant Harrelson told them no and that they were going to put Butch in a smaller cell and if he gets worse they would just "O.R." him.

97. Scott and Porcher then drove him to the jail.

98. Once putting Butch in the car, it was so hot that even Defendant Scott was out of breath and had to lean over the rear of his patrol car to recover. Defendant Porcher gagged or dry-heaved multiple times as well, due to the heat and the smell of Butch as he was covered in vomit and feces.

99. Defendant Porcher ordered Scott to exceed the speed limit stating, "let's go man-come on-pick up the pace a little bit-there ain't no speed limit for this shit – I'm not smelling this motherfucker."

100.     The drive from the scene of the arrest to the jail took approximately 3 minutes and fifteen seconds. In that short amount of time, Butch's condition continued to obviously, seriously, and rapidly decline. Still no officers made the decision to get Butch the medical attention he obviously needed.

101.     During the time Defendants Scott and Porcher had Butch in the car and were driving him to the jail despite his obviously serious and worsening condition, Defendant Porcher took the time to pull out his cell phone and take two "selfies" with Butch behind him in the backseat. Porcher texts the pictures to an unknown recipient.

### Butch Arrives at the Jail

102.     By the time Scott and Porcher arrived at the jail with Butch, he was unable to get out of the car, to stand, or to walk under his own effort.

103.     Despite their awareness of his obvious, serious, and deteriorating medical condition, officers attempted to get Butch out of the car and stand him up, but he immediately fell down on the ground face first into the pavement.

104.     While Defendants Scott and another officer were carrying Butch into the jail, and despite Scott's full awareness of Butch's obvious, serious, and deteriorating medical condition, rather than provide medical assistance, Scott angrily yelled at Butch to "Walk!"

105.     At this point, Butch is still sweating profusely, unsteady on his feet, semi-conscious and can be heard heaving, having labored breathing, and moaning. The sounds of a dying man.

106.     Defendants Scott, Porcher, and Hulett, observed and were aware that Butch was unable to communicate, unable to walk or stand on his own, was very sweaty, was pale, had purple lips, and was covered in vomit and feces such that Defendants Scott, Porcher, and Hulett were aware of the substantial risk that Butch was suffering from drug overdose and/or physical illness that required immediate medical attention.

107.     A reasonable officer under the circumstances would have sought medical attention for Butch.

108.     Instead, Defendant Scott took Butch to a cell and screamed at him to "get in there."

109.     At this point, Butch can clearly be heard with garbled speech, moaning, and heaving sounds. Butch tried to talk to officers but his speech was garbled and unintelligible.

110.     At one point, Butch screams out and Defendant Scott simply yells at him to "Stop fucking moving!"

111.     As they enter the cell, Butch stumbles forward into the cell and lands face down in the cold cement floor, still handcuffed and with leg irons on. Defendant Scott is behind Butch holding his right arm as Butch faceplants into the floor.

112.     Defendant Scott then placed his knee in Butch's upper back, near his neck, significantly restricting his ability to breathe at a time when he was already audibly struggling to breathe without a grown adult's bodyweight on his back.

113.     Defendant Scott then gets up and leaves Butch still lying in a prone position, with handcuffs and leg irons on.

114.     As Butch continues to fight to breathe and stay alive, he attempts to roll over from the prone position while still handcuffed but Defendant Scott would not let him and instead jerked on the handcuffs to force Butch back into the prone position.

115.     Defendant Carter then, again and without justification, places his knee in Butch's back while pulling on his cuffed hands. Another officer also has his knees on Butch's legs at this time.

116.     Finally, Defendant Carter and the other officer get off of Butch. The handcuffs were taken off of Butch, but his left arm remained stuck behind his back and the leg irons were left on.

117.     Despite the obviousness of Butch's serious medical condition, and the obvious substantial risk of harm posed to Butch's health and safety, none of officers Scott, Porcher, and Hulett sought medical attention for Butch.

118.     After Butch has been left in the cell with no supervision/monitoring and stopped moving, Defendant Porcher walks by the cell and calls out Butch's name. Butch did not respond. There was only silence from a dying man. Rather than check on him, Porcher walks away.

119.     About 30 seconds after Porcher walks away, officers can be heard laughing in the office on the "Book In" hall, not far from Butch.

120.     5 minutes after Defendant Porcher ignored Butch's unresponsiveness, Defendant Rinkel walks by the cell and tells Butch to "get up on the bunk, okay."

121.     Butch does not respond.

122.     Defendant Rinkel follows up by saying "Hello?" a couple of times and then slowly saunters back to the office - then calls for "Sarge".

123.     At this point, Defendant Hulett and asks if he (Butch) is not moving.

124.     Defendant Rinkel then tells the officers "you guys go in there and check on him."

125.     The sense of urgency from the Chief of Police for Clinton is as if he were going to check on a load of laundry not a dying man.

### *Attempts to Resuscitate Butch*

126.     Defendants Scott and Hulett walked toward Butch's cell.

127.     In response to this clear medical emergency, officers Scott, Hulett, and Porcher still acted with no sense of urgency or basic human decency.

128.     Defendant Porcher, instead of helping with emergency care such as checking for a pulse or performing CPR, walked part of the way towards the cell holding Butch then turns back towards the office and says "Fuck this!" Further delaying emergency care for Butch.

129.     Defendant Porcher turned back to get aerosol disinfectant – a respiratory irritant – to spray on Butch through the cell bars at a time when Butch was dying and every breath, every second mattered.

130.     Defendant Porcher approaches the cell bars and sprays those with disinfectant spray and then puts the can and his arm through the bars and holds down the disinfectant spray button – spraying disinfectant all over the dying body of Butch. Further delaying emergency care for Butch.

131.     At this point, Defendant Hulett asks for an ambulance to be called and specifically stated to Defendants Porcher and Scott that she did not see Butch's chest moving.

132.     Defendant Porcher then enters the cell, followed by Defendant Hulett.

133.     Defendant Porcher places his left hand on Butch's midback and grabs Butch's right wrist. Porcher tells Hulett and Scott that Butch does not have a pulse.

134.     Porcher then stopped and walked away.

135.     Defendant Hulett then grabbed Butch by his ankles and lower leg and dragged him out of the cell, leaving a trail of bodily fluids behind.

136.     Defendant Hulett started chest compressions 90 seconds after stating that she did not see any breathing movement from Butch, and one minute since Defendant Porcher stated Butch did not have a pulse.

137.     One minute later, and two minutes after Butch was pulled from his cell, Defendant Hulett asks for the ambu bag, but no one has provided any air or breathing for Butch yet.

138.     Defendant Sinor's EMTs arrived at the scene. One EMT asked if there is a pulse, to which Defendant Hulett responded "No."

139.     No further questions about what happened to Butch were asked and Defendants Porcher, Scott, Hulett, Harrelson, and Rinkel do not offer up any other information regarding Butch's condition.

140.     Defendants Porcher, Scott, Hulett, Harrelson, and Rinkel specifically did not tell the EMTs that Butch was dehydrated, was intoxicated, had glassy eyes with dilated pupils, was unsteady on his feet, had slurred and erratic speech, had repeatedly requested to go to the hospital, or that Butch had admitted to taking narcotics earlier that day.

141.     The ambu bag which Defendant Hulett requested was then thrown by Butch's head.

142.     At this point, Defendant Sinor's employees arrive and wheel in a gurney.

143.     Defendant Sinor's employees were fully aware of the importance of every passing moment when a patient is not breathing and/or has no pulse.

144.     Rather than exercise ordinary care, which in this situation would call for a quick response, Defendant Sinor's employees moved with no urgency and acted unreasonably and/or recklessly, and with disregard for the health and safety of Butch, in failing to provide Butch with the necessary immediate medical interventions.

145.     While fire department paramedics were performing chest compressions on Butch, Defendant Porcher again pulls out his cell phone and takes a picture of Butch.

146.     About 90 seconds later, Porcher again pulls out his cell phone and takes a picture of Butch.

147.     Approximately 13 minutes after having arrived on the scene, Defendant Sinor's EMTs finally ask other questions besides "Is there a pulse?", asking "What happened?"

148.     Defendant Porcher responds "He never got up. He kept throwing up and dry heaving."

149.     Defendants Porcher, Scott, Hulett, Harrelson, and Rinkel specifically did not tell the EMTs that Butch was dehydrated, was intoxicated, had glassy eyes with dilated pupils, was unsteady on his feet, had slurred and erratic speech, had repeatedly requested to go to the hospital, or that Butch had admitted to taking narcotics earlier that day.

150.     Finally, Defendant Sinor's EMTs ask for a history on Butch.

151.     Defendant Carter only responds that Butch had pneumonia and has Hep C.

152.     Fifteen minutes after Defendant Sinor's EMTs arrived on the scene, Butch is finally placed on a gurney. Still, Defendant Sinor's EMTs have not performed a single chest compression on Butch, instead leaving it to two fire paramedics to do nearly all of the chest compressions.

153.     Finally, about seventeen minutes after Defendant Sinor's EMTs arrived on scene, Butch leaves the jail in an ambulance headed toward the hospital.

## THE CAUSES OF ACTION

## COUNT I: EXCESSIVE FORCE IN VIOLATION OF 42 U.S.C. § 1983

154.     Plaintiff incorporates all previous allegations and statements as if fully restated herein.

155.     Under the Fourth Amendment of the United States, every person in the United States of America has the right to be secure against unreasonable seizures of their person, and 42 U.S.C. § 1983 prevents individuals from acting in a government capacity or under color of law from unlawful deprivation of those rights.

**Defendants Porcher, Scott, and Hulett.**

156.     Defendants Porcher, Scott, and Hulett's conduct on August 31, 2021, specifically repeatedly beating and throwing Butch on the ground while handcuffed, placing their full body weight on his back, all while Butch was vomiting, defecating himself, had slurred speech, had glassy eyes, was uneasy on his feet, and struggling to breath in temperatures in excess of 90 degrees, in affecting an arrest, where Butch had submitted to police authority, had not been violent, had not resisted arrest or attempted to flee, and did not pose any threat of physical harm to any officer or person on the scene constitutes excessive force and is a deprivation of Butch's rights under the U.S. Constitution.

157.     A reasonable law enforcement officer would know that the use of excessive force under these circumstances is a violation of constitutionally guaranteed rights and that a citizen's right not to be subjected to excessive force was clearly established and secured at the time Defendants beat Butch. See *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985).

158.     At the time of the actions and/or omissions of Defendants Porcher, Scott, and Hulett, 22 O.S. § 34.1 defined "excessive force" as "force which exceeds the degree of physical force permitted by law or the policies and guidelines of the law enforcement entity."

159.     It is not reasonable to repeatedly manhandle and slam an arrestee to the ground in a prone position and place knees and bodyweight on the arrestee's neck, back, side, and legs while the arrestee was profusely sweating, handcuffed, vomiting, defecating himself, and

struggling to breath in temperatures in excess of 90 degrees, when affecting an arrest; especially where the arrestee had submitted to police authority, followed commands given to him, had not been violent, had not resisted arrest or attempted to flee, and did not pose any threat of physical harm to any officer or person on the scene.

160.     Defendants Porcher, Scott, and Hulett had a duty to refrain from violating Butch's constitutional right to be free from excessive force.

161.     Any reasonable law enforcement officer would have been aware that the conduct of Defendants Porcher, Scott, and Hulett, as described herein, would violate Butch's constitutional rights.

162.     The force that Defendants Porcher, Scott, and Hulett used was excessive and unnecessary under the totality of the circumstances.

163.     The excessive force used by Defendants Porcher, Scott, and Hulett upon Butch was not justified or privileged under clearly established law.

164.     No legitimate law enforcement objective was accomplished by the degree of such force utilized by Defendants Porcher, Scott, and Hulett.

165.     Defendants Porcher, Scott, and Hulett's use of force was objectively unreasonable, as well as intentional, willful, wanton, and in gross, reckless, negligent and/or deliberate disregard of Butch's rights under the Fourth Amendment of the United States Constitution.

166.     The use of force by Defendants Porcher, Scott, and Hulett posed a substantial risk of causing death or serious bodily harm that was known to Defendants Porcher, Scott, and Hulett, at the time and did in fact cause great bodily harm, mental and emotional injury, and dignitary injury.

167.     Butch was aware that he was dying and needed immediate medical attention, while Defendants Porcher, Scott, and Hulett manhandled him, interfered with a cursory attempt of

paramedics to evaluate Butch at the scene, and deliberately drove him away from medical care and to the jail instead.  Defendants Porcher, Scott, and Hulett's actions were indecent, inhumane, traumatic, and completely unacceptable in a civilized society.

168.    The above-described conduct of Defendants Porcher, Scott, and Hulett was a direct and proximate cause of the deprivation of Butch's clearly established Fourth Amendment rights, as well as the resulting injuries and damages described below.

169.    Defendants Porcher, Scott, and Hulett, under color of law, unjustifiably used excessive force and, thus, violated Butch's constitutional rights and are liable for the same.

170.    As a result of this excessive force, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

171.    As a result of this excessive force, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

## COUNT II: FAILURE TO INTERVENE TO PREVENT USE OF EXCESSIVE FORCE IN VIOLATION OF 42 U.S.C. § 1983

172.    Plaintiff incorporates all previous allegations and statements as if fully restated herein.

**Defendant Rinkel**

173.    Chief Rinkel participated in the arrest of Butch, was present throughout the entire encounter and arrest of Butch and witnessed the unnecessary uses of force carried out by his subordinate officers.

174.    Based on his presence at the scene and his proximity to Butch and Defendants Porcher, Scott, and Hulett, Defendant Rinkel had a reasonable opportunity to intervene or stop the excessive use of force against Butch by Rinkel's subordinate officers.

175.     Defendant Rinkel did not believe the use of force was necessary at the time of Defendants Porcher, Scott, and Hulett's excessive use of force against Butch.

176.     Defendant Rinkel had an affirmative duty to prevent another law enforcement officer's use of excessive force. *Mick v. Brewer*, 76 F.3d 1127 (1996); *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008); *Jones v. Norton*, 809 F.3d 564 (10th Cir. 2015).

177.     Defendant Rinkel negligently, recklessly, deliberately, and/or unlawfully failed to take any reasonable steps to prevent or stop the use of excessive force by Defendants Porcher, Scott, and Hulett.

178.     Despite there being no justification for the force used by officers on Butch while already handcuffed, compliant, vomiting, sweating profusely, defecating himself, struggling to breathe, and begging to be taken to the hospital, Rinkel stood by and permitted his officers to continue their unjustified use of force.

179.     The above-described failure of Defendant Rinkel was a direct and proximate cause of the deprivation of Butch's clearly-established Fourth Amendment rights, as well as the resulting injuries and damages described.

180.     As a result of this failure to intervene and stop the excessive force, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

181.     As a result of this failure to intervene and stop the excessive force, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**Defendant Harrelson**

182.     Defendant Harrelson participated in the arrest of Butch, was present throughout the entire encounter and arrest of Butch and witnessed the unnecessary uses of force carried out by his fellow officers.

183.     Based on his presence at the scene and his proximity to Butch and Defendants Porcher, Scott, and Hulett, Defendant Harrelson had a reasonable opportunity to intervene or stop the excessive use of force against Butch by Harrelson's fellow officers.

184.     Defendant Harrelson did not believe the use of force was necessary at the time of Defendants Porcher, Scott, and Hulett's excessive use of force against Butch.

185.     Defendant Harrelson had an affirmative duty to prevent another law enforcement officer's use of excessive force. *Mick v. Brewer*, 76 F.3d 1127 (1996); *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008); *Jones v. Norton*, 809 F.3d 564 (10th Cir. 2015).

186.     Defendant Harrelson negligently, recklessly, deliberately, and/or unlawfully failed to take any reasonable steps to prevent or stop the use of excessive force by Defendants Porcher, Scott, and Hulett.

187.     Despite there being no justification for the force used by officers on Butch while already handcuffed, compliant, vomiting, sweating profusely, defecating himself, struggling to breathe, and begging to be taken to the hospital, Defendant Harrelson stood by and permitted his officers to continue their unjustified use of force.

188.     The above-described failure of Defendant Harrelson was a direct and proximate cause of the deprivation of Butch's clearly-established Fourth Amendment rights, as well as the resulting injuries and damages described.

189.     As a result of this failure to intervene and stop the excessive force, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

190.     As a result of this failure to intervene and stop the excessive force, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**COUNT III: DELIBERATELY INDIFFERENT DENIAL OF MEDICAL CARE IN VIOLATION OF 42 U.S.C. § 1983**

191.     Plaintiff incorporates all previous allegations and statements as if fully restated herein.

**Defendant Rinkel**

192.     Chief Rinkel was present throughout the entire arrest of Butch, was aware that Butch admitted to having taken drugs earlier, and witnessed Butch vomiting, sweating profusely, defecating himself, struggling to breathe, and begging to be taken to the hospital.

193.     Rinkel did nothing to attempt to obtain actual medical care for Butch at the scene of his arrest or at the Clinton City Jail.

194.     At the scene of the arrest, Defendant Rinkel asked for emergency medical services to be called to the scene.

195.     Upon arrival Defendant Sinor's employees placed a blood pressure cuff and finger pulse monitor on Butch.

196.     However, the conduct of Defendants Porcher and Scott at the scene, prevented obtaining any readings on either Butch's blood pressure or pulse, as they continued to repeatedly slam Butch on the ground – including the hot pavement, continued to place their knees on his back and to push his head into the ground, despite the fact that Butch was handcuffed and had been sitting on the ground, was struggling to breathe, vomiting, and defecating himself.

197.     Defendant Sinor's employees made no further attempt to evaluate Butch.

198.     Defendant Rinkel specifically acknowledged that Butch needed medical attention, asking his subordinate officers if Butch should be taken to the hospital. Rinkel consented to the decision of his subordinate officers, Porcher and Harrelson, not to take Butch to the hospital because they believed Butch would just destroy a hospital room.

199.     Defendant Rinkel did not ask for Defendant Sinor's EMTs to follow Butch to the jail to attempt to check on him there.

200.     At the jail, Defendant Rinkel did not perform – or order someone to perform – a medical screening of Butch at his arrival to the jail.

201.     Defendant Rinkel did not leave anyone to monitor Butch's serious condition, either.

202.     Defendant Rinkel noticed that Butch was unresponsive in his cell and only ordered other officers to check on Butch. He did nothing to provide any necessary emergency medical treatment such as CPR. Instead, when he saw Butch unresponsive after all of Butch's symptoms and everything Rinkel had witnessed at the scene of the arrest, Rinkel walked away, depriving Butch of valuable time during which he lost his chance of survival.

203.     As a result of this deliberate indifference, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

204.     As a result of this deliberate indifference, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**Defendant Harrelson**

205.     Plaintiff incorporates all previous statements and allegations as if restated herein.

206.     Despite his knowledge of Butch's obvious, serious medical condition and knowledge that Butch was dehydrated and had taken narcotics, Defendant Harrelson specifically told Defendant Rinkel and other officers that they would not take Butch to the hospital.

207.     Defendant Harrelson made this statement despite knowing that Butch needed to be medically cleared before being taken to the jail and despite being aware that Defendant Sinor's employees had been unable to check any of Butch's vital signs at the scene of the arrest.

208.     When asked by his superior, Defendant Rinkel, if Butch should be taken to the hospital, Defendant Harrelson dictated that Butch would not be taken to the hospital because Harrelson believed Butch might destroy a hospital room.

209.     As a result of this deliberate indifference, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

210.     As a result of this deliberate indifference, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**Defendant Porcher**

211.     Plaintiff incorporates all previous statements and allegations as if restated herein.

212.     Despite his knowledge of Butch's obvious, serious medical condition and knowledge that Butch was dehydrated and had taken narcotics, Defendant Porcher agreed with Defendant Harrelson and specifically told Defendant Rinkel and other officers that they would not take Butch to the hospital.

213.     Defendant Porcher made this statement despite knowing that Butch needed to be medically cleared before being taken to the jail and despite being aware that Defendant Sinor's employees had been unable to check any of Butch's vital signs at the scene of the arrest.

214.     When asked by his superior, Defendant Rinkel, if Butch should be taken to the hospital, Defendant Porcher explicitly agreed with Defendant Harrelson's statement that Butch would not be taken to the hospital because Butch might destroy a hospital room.

215.     As a result of this deliberate indifference, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

216.     As a result of this deliberate indifference, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**Defendant Hulett**

217.     Plaintiff incorporates all previous statements and allegations as if restated herein.

218.     Despite her knowledge of Butch's obvious, serious medical condition and knowledge that Butch was dehydrated and had taken narcotics, Defendant Hulett agreed with Defendants Harrelson and Porcher when they specifically told Defendant Rinkel and other officers that they would not take Butch to the hospital.

219.     Defendant Hulett agreed with those statements despite knowing that Butch needed to be medically cleared before being taken to the jail and despite being aware that Defendant Sinor's employees had been unable to check any of Butch's vital signs at the scene of the arrest.

220.     When asked by his superior, Defendant Rinkel, if Butch should be taken to the hospital, Defendant Hulett agreed with Defendant Harrelson's statement that Butch would not be taken to the hospital because Butch might destroy a hospital room.

221.     As a result of this deliberate indifference, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

222.     As a result of this deliberate indifference, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**Defendant Scott**

223.     Plaintiff incorporates all previous statements and allegations as if restated herein.

224.     Despite his knowledge of Butch's obvious, serious medical condition and knowledge that Butch was dehydrated and had taken narcotics, Defendant Scott agreed with Defendants Harrelson and Porcher when they specifically told Defendant Rinkel and other officers that they would not take Butch to the hospital.

225.     Defendant Scott agreed with those statements despite knowing that Butch needed to be medically cleared before being taken to the jail and despite being aware that Defendant Sinor's employees had been unable to check any of Butch's vital signs at the scene of the arrest.

226.     When asked by his superior, Defendant Rinkel, if Butch should be taken to the hospital, Defendant Scott explicitly agreed with Defendant Harrelson's statement that Butch would not be taken to the hospital because Butch might destroy a hospital room.

227.     As a result of this deliberate indifference, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

228.     As a result of this deliberate indifference, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

### COUNT IV: DELIBERATELY INDIFFERENT POLICIES, PRACTICES, AND CUSTOMS AND DELIBERATELY INDIFFERENT TRAINING AND SUPERVISION IN VIOLATION OF 42 U.S.C. § 1983

229.     Plaintiff incorporates all previous allegations and statements as if fully restated herein.

**Defendants Rinkel (official) & City of Clinton – Excessive Force**

230.     Defendants Clinton and Rinkel were aware that, pursuant to 22 O.S. § 34.1, "[e]ach law enforcement entity which employs any peace officer shall adopt policies and guidelines concerning the use of force by peace officers which shall be complied with by peace officers

in carrying out the duties of such officers within the jurisdiction of the law enforcement entity."

231.    The above-described conduct reflects an established policy, practice, custom or decision, officially adopted or informally accepted, ratified, and/or condoned by Defendant Clinton and Defendant Rinkel that consists of putting officers on the streets without proper training and supervision as to when and how to safely, reasonably, and appropriately use force against citizens when effectuating an arrest.

232.    The above-described conduct reflects an established policy, practice, custom, or decision, officially adopted or informally accepted, ratified, or condoned by Defendant Rinkel and Defendant Clinton, and their officials and employees, that consists of dispatching officers to situations involving individuals with serious, life-threatening drug overdose and/or physical illness without proper training and supervision as to how to encounter and communicate with those citizens and avoid unnecessary and unreasonable uses of force.

233.    During all times relevant hereto, there were no guidelines, or wholly inadequate guidelines, in place as to the standard of care specific to detainees'/arrestees' physical and mental health. It is common knowledge that drug overdose and/or physical illness is prevalent in citizens who encounter police and it is vital that police departments have policies in place establishing a constitutionally permissible standard of care for officers to follow in order to address this crisis.

234.    Defendant Rinkel was the official policymaker and final decision-maker for the Clinton Police Department in the area of law enforcement.

235.    In the alternative, Defendant City of Clinton was the official policymaker and final decisionmaker in the area of law enforcement.

236.     The existence of policies, practices, or customs that are contrary to the contours of 22 O.S. § 31.4 and a citizen's Fourth Amendment right to be free from excessive force is evidenced by Defendant Rinkel's presence and participation in the arrest of Butch, and his refusal to condemn, stop, or rectify the unlawful uses of force being perpetrated against Butch directly in front of him.

237.     In the alternative to paragraph 117, Rinkel's choice not to say anything to condemn, stop, or rectify the unlawful uses of force being perpetrated against Butch directly in front of him was consent and ratification of the unlawful use of force or was evidence that the actions of the officers in using unlawful force against Butch was, in fact, in line with the way things are done at the Clinton Police Department and constitute an informal policy, practice, or custom.

238.     It is clearly established law that Defendant Rinkel and/or Clinton must train and supervise police officers, deputies, and other law enforcement personnel about proper procedures for arrests and the reasonable use of force, including, but not limited to excessive force, to reduce the pervasive and unreasonable risk of grave constitutional injury.

239.     Defendant Rinkel and/or Clinton had an affirmative duty to take action to properly train and supervise its employees or agents and prevent their unlawful actions.

240.     Defendant Rinkel and/or Clinton failed to properly train and supervise their employees or agents in a manner and to an extent that amounts to deliberate indifference.

241.     Defendants Scott, Porcher, and Hulett, engaged in the above-described conduct pursuant to this policy, practice, custom, or decision.

242.     Defendant Clinton and Defendant Rinkel had a policy, custom, and procedure of not ensuring that officers like Defendants Porcher, Scott, and Hulett were appropriately and

adequately trained as to when and under what circumstances force can be used when making an arrest.

243.     Defendants Clinton and Rinkel are required to take action to properly train and supervise their employees or agents and prevent their unlawful actions, but failed to do so in a manner and to an extent that amounts to deliberate indifference. Defendants Porcher, Scott, and Hulett engaged in the above-described conduct pursuant to this policy, practice, custom, or decision.

244.     The need to train and supervise Clinton police officers and law enforcement personnel about proper procedures for arrests and the reasonable use of force, including, but not limited to, excessive force, to reduce the pervasive and unreasonable risk of grave constitutional injury is clearly established in law.

245.     As a result of this deliberate indifference, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

246.     As a result of this deliberate indifference, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**Defendants Rinkel (official) & City of Clinton – Medical Care**

**Policy/practice/custom of denial**

247.     It is clearly established law that Defendant Rinkel and/or Clinton must provide obviously needed medical care to arrestees exhibiting signs of drug overdose and/or serious physical illness to reduce the pervasive and unreasonable risk of grave constitutional injury.

248.     Defendant Rinkel and/or Clinton have a policy of not providing obviously needed medical care to arrestees exhibiting signs of drug overdose and/or serious physical illness in a manner and to an extent that amounts to deliberate indifference, as evidenced by the

involvement of the final decision and policymaker for police matters – Defendant Rinkel – in the decision not to provide medical care to Butch.

249.     Defendants Scott, Porcher, Hulett, and Harrelson, engaged in the above-described conduct pursuant to this policy, practice, custom, or decision.

250.     It is clearly established law that Defendant Rinkel and/or Clinton cannot admit semi-conscious persons exhibiting obvious, serious signs of drug overdose and/or severe physical illness to the jail without a medical examination of that person to address their obvious, serious medical needs.

251.     Defendants Rinkel and/or Clinton had a policy of admitting semi-conscious persons exhibiting obvious, serious signs of drug overdose and/or severe physical illness to the jail without a medical examination of that person to address their obvious, serious medical needs as evidenced by the conduct here and the direct, personal involvement of the final decision and policymaker for police matters – Defendant Rinkel – in the decision to take Butch to the jail and detain him without any medical examination.

252.     Defendants Scott, Porcher, Hulett, and Harrelson, engaged in the above-described conduct pursuant to this policy, practice, custom, or decision.

253.     Defendant Rinkel's acquiescence to and ratification of Defendants' Porcher and Harrelson's directives that Butch would not be taken to the hospital despite his obviously serious condition and that Defendant Sinor's employees were unable to check Butch's vital signs to clear him to go to the jail constitutes and official policy or custom of Defendant Rinkel and/or Defendant Clinton.

254.     It is clearly established law that Defendant Rinkel and/or Clinton must train and supervise police officers, deputies, and other law enforcement personnel about the provision of obviously needed medical care to detainees at the City Jail exhibiting signs of drug

overdose and/or serious physical illness to reduce the pervasive and unreasonable risk of grave constitutional injury.

255.     Defendant Rinkel and/or Clinton failed to properly train and supervise their employees or agents regarding proper procedures the provision of obviously needed medical care to detainees at the City Jail exhibiting signs of drug overdose and/or serious physical illness in a manner and to an extent that amounts to deliberate indifference. Defendants Scott, Porcher, Hulett, and Harrelson, engaged in the above-described conduct pursuant to this policy, practice, custom, or decision.

256.     Defendant Clinton and Defendant Rinkel had a policy, custom, and procedure of not ensuring that officers like Defendants Scott, Porcher, Hulett, and Harrelson were appropriately and adequately trained as the provision of obviously needed medical care to detainees at the City Jail exhibiting signs of drug overdose and/or serious physical illness.

257.     Defendants Clinton and Rinkel are required to take action to properly train and supervise their employees or agents and prevent their unlawful actions but failed to do so in a manner and to an extent that amounts to deliberate indifference. Defendants Porcher, Scott, Hulett, and Harrelson engaged in the above-described failure to provide medical care at the City Jail pursuant to this policy, practice, custom, or decision.

258.     The need to train and supervise Clinton police officers and law enforcement personnel about proper procedures the provision of obviously needed medical care to detainees at the City Jail exhibiting signs of drug overdose and/or serious physical illness to reduce the pervasive and unreasonable risk of grave constitutional injury is clearly established in law.

259.     Defendant Rinkel's choice not to provide any medical care to Butch at the jail when it was obvious Butch was in need of immediate medical care demonstrated the official policy or custom of Defendant Rinkel and/or Defendant Clinton.

260.     Each of these actions or inactions of Defendant Rinkel were made with deliberate indifference to the health and safety of citizens of Clinton, including Butch Herndon.

261.     As a result of this deliberate indifference, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

262.     As a result of this deliberate indifference, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**Training and Supervision**

263.     It is clearly established law that Defendant Rinkel and/or Clinton must train and supervise police officers, deputies, and other law enforcement personnel about proper procedures for arrests and the provision of obviously needed medical care to arrestees exhibiting signs of drug overdose and/or serious physical illness to reduce the pervasive and unreasonable risk of grave constitutional injury.

264.     Defendant Rinkel and/or Clinton had a policy, custom, and procedure of not ensuring that officers, like Defendants Porcher, Scott, Hulett, and Harrelson, were trained to recognize and provide medical care to citizens suffering severe symptoms from a drug overdose/serious physical illness while being detained in police custody – whether at the jail or at the scene of the arrest.

265.     This policy/custom of failing to properly train and supervise was clearly demonstrated and promulgated or continued by Defendant Rinkel, the final policymaker for police matters in the City of Clinton, as evidenced by his actions at the scene – not

intervening to ensure medical care was obtained for Butch or correct officers' conduct, he asked his subordinate officers whether they should take Butch to the hospital despite not having been cleared by Defendant Sinor's employees and his obviously serious medical condition and waited for Defendants Porcher and Harrelson to make a deliberate decision not to obtain medical care for Butch, and then went along with that decision.

266.    Defendants Porcher, Scott, Hulett, and Harrelson engaged in the above-described conduct pursuant to this policy, practice, custom, or decision.

267.    It is clearly established law that Defendant Rinkel and/or Clinton must train and supervise police officers, deputies, and other law enforcement personnel regarding proper procedures the provision of obviously needed medical care to detainees at the City Jail to reduce the pervasive and unreasonable risk of grave constitutional injury.

268.    Defendant Rinkel and/or Clinton had a policy, custom, and procedure of not ensuring that officers, like Defendants Porcher, Scott, Hulett, and Harrelson, were trained to recognize and provide medical care to citizens suffering severe symptoms from a drug overdose/serious physical illness while being detained in police custody at the City Jail.

269.    This policy/custom was clearly demonstrated and promulgated or continued by Defendant Rinkel, the final policymaker for police matters in the City of Clinton, as evidenced by his actions at the jail in failing to provide any medical care himself, failing to supervise officers as they dragged Butch out of his cell and waited for emergency medical services to arrive while Defendant Porcher took pictures of Butch as he lay dying in the hallway.

270.    As a result of these deliberately indifferent policies, practices, and/or customs; training; and supervision, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

271.     As a result of these deliberately indifferent policies, practices, and/or customs; training; and supervision, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**Defendant Sinor**

272.      In the alternative to paragraph 11, and to the extent Defendant Sinor may found to have been acting as a state actor and under color of law in their role providing emergency care to persons detained at the Clinton City Jail, Defendant Sinor violated Butch's constitutional rights to adequate, necessary medical care while detained.

273.     Defendant Sinor had a duty to implement policies, procedures, and customs; training; and supervision to ensure that their employees, when providing emergency medical services to detainees at the Clinton City Jail, provided constitutionally-adequate medical care so as to not violate a detainee's Eight and Fourteenth Amendment rights to necessary medical care.

274.     The above-described conduct of Defendant Sinor's employees when supposed to be providing emergency medical care to Butch at the Clinton City Jail reflects an established policy, practice, custom or decision, officially adopted or informally accepted, ratified, and/or condoned by Defendant Sinor that consists of sending employees to provide emergency medical care without proper training and supervision as to when and how to quickly provide life-saving care, including performing CPR, to a detainee who is not breathing and is not responsive, is covered in vomit, and has obviously been suffering fecal incontinence.

275.     The existence of policies, practices, or customs that are contrary to the contours of a citizen's Eighth and Fourteenth Amendment right to necessary medical care is evidenced by Defendant Sinor's employees failure to act with any urgency to provide emergency medical

care despite their knowledge of the importance of every passing second when providing such care to a person in Butch's condition.

276.     Defendant Sinor is aware of and has reviewed the conduct of the employees responding to the call for emergency medical care for Butch and has found that those employees acted in accordance with Sinor's training, policies, practices, and customs when providing care to detainees at the Clinton City Jail.

277.     Defendant Sinor is required to take action to properly train and supervise its employees or agent and prevent their unlawful actions, but failed to do so in a manner and to an extent that amounts to deliberate indifference to the health and safety of detainees at the Clinton City Jail, including Butch. Defendant Sinor's employees who responded to the call for emergency medical care at the jail engaged in the above-described conduct pursuant to this policy, practice, custom, or decision.

278.     The need to train and supervise Sinor medical employees about proper procedures for providing necessary medical care to persons detained at the Clinton City Jail to reduce the pervasive and unreasonable risk of grave constitutional injury is clearly established in law.

279.     As a result of these deliberately indifferent policies, practices, and/or customs; training; and supervision, Butch suffered a loss of or decreased chance of survival and/or death.

280.     As a result of these deliberately indifferent policies, practices, and/or customs; training; and supervision, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**COUNT V: INDIVIDUAL SUPERVISORY LIABILITY FOR MAINTAINING DELIBERATELY INDIFFERENT POLICIES, PRACTICES AND CUSTOMS, AND DELIBERATELY INDIFFERENT TRAINING AND SUPERVISION IN VIOLATION OF 42 U.S.C. § 1983**

281.     Plaintiff incorporates all previous allegations and statements as if fully restated herein.

**Defendant Rinkel**

282.     Defendant Rinkel was personally involved in the arrest of Butch Herndon and witnessed his officers repeatedly using unnecessary and excessive force against Butch where he had committed only a misdemeanor, was not armed, was not trying to escape and posed no threat of harm to anyone.

283.     Defendant Rinkel stood by in approval of the tactics of Defendants Porcher, Scott, and Hulett, and never said or did anything to correct their actions or order that they cease the use of excessive force on Butch.

284.     These actions of Defendants Porcher, Scott, and Hulett, in the presence of and with the approval of Defendant Rinkel evidences a policy and practice of the Clinton police department, promulgated, created, or maintained by Defendant Rinkel of using excessive force against citizens of Clinton.

285.     The decisions and actions of Porcher, Scott, and Hulett were pursuant to and in furtherance of Rinkel's policy of permitting the use of excessive force against citizens of Clinton.

286.     Defendant Rinkel was personally involved in the arrest and detention of Butch Herndon, having witnessed Butch's obviously serious medical condition and need for medical attention at the scene of the arrest and at the jail.

287.     Rinkel had full knowledge that Butch had taken narcotics, was dehydrated, was suffering fecal incontinence, vomiting repeatedly, begging to be taken to the hospital, unsteady on his feet, having trouble breathing, and had slurred, erratic speech.

288.     Rinkel participated in a deliberative discussion with his subordinate officers at the scene of the arrest, all of who knew of Butch's serious condition and symptoms, and reached the decision not to take Butch to the hospital despite the inability of EMTs to medically evaluate him at the scene of the arrest, pursuant to a custom, policy, procedure, or practice of denying necessary medical care to arrestees in obvious, serious medical distress.

289.     Such policy was created, promulgated, or maintained by Defendant Rinkel in deliberate disregard of the high probability of medical and constitutional injury to arrestees.

290.     The decisions and actions of Defendants Porcher, Scott, Hulett, and Harrelson in denying Butch access to emergency medical care were carried out in furtherance of and as a result of the policy created, promulgated, or maintained by Defendant Rinkel.

291.     Defendant Rinkel was at the jail during Butch's detention and personally found Butch non-responsive. He told other officers to check on Butch and walked away, making not attempt to assist in providing obviously needed and urgent emergency medical care to Butch.

292.     During the timeframe after Rinkel found Butch unresponsive, Defendant Porcher stopped his attempt to provide medical care to, instead, hose down a dying man with aerosol disinfectant.

293.     During that same timeframe, Defendants Hulett and Scott acted with little urgency in beginning life-saving CPR for Butch, causing unnecessary delay in the provision of care to Butch.

294.     When EMTs arrived, Defendants Porcher, Scott, Hulett, and Harrelson all failed to provide a complete description of Butch's serious symptoms and did not even tell EMTs that Butch had admitted to taking narcotics earlier that day.

295.     Each of these actions of subordinate officers were a reflection of the deliberately indifferent policy, practice, and/or custom of not providing medical care to persons exhuibiting serious and obvious signs of drug overdose or serious physical illness. Such policy was promulgated, maintained, or created by Defendant Rinkel.

296.     Defendants Porcher, Scott, Hulett, and Harrelson all acted without urgency and in deliberate disregard to Butch Herndon's obvious need for immediate medical attention at the jail pursuant to and as a result of the policy, practice, and/or custom of Defendant Rinkel.

297.     Each of these actions or inactions of Defendant Rinkel were made with deliberate indifference to the health and safety of citizens of Clinton, including Butch Herndon.

298.     As a result of Rinkel's actions/inactions and/or deliberate indifference, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

299.     As a result of Rinkel's actions/inactions and/or deliberate indifference, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

## COUNT VI: NEGLIGENCE

300.     Plaintiff incorporates all previous allegations and statements as if fully restated herein.

**Defendant Rinkel**

301.     Defendant Rinkel had a duty to act reasonably when encountering citizens, in an effort to prevent harm to Butch and others.

302.     On August 31, 2021, Defendant Rinkel acted unreasonably and negligently when he encountered Butch through his acts and/or omissions, including but not limited to:

    a.  The failure to provide needed medical assistance at the time and scene of Butch's arrest;

    b.  The failure to intervene to prevent the use of excessive force against Butch.

303.     As a result of Defendant Rinkel's choices and actions on August 31, 2021, Butch suffered serious injuries, including death.

304.     Defendant Rinkel was acting within the scope of his employment at all relevant times, such that Defendant Clinton is liable for the damages caused to Butch under the Oklahoma Governmental Tort Claims Act.

305.     In the alternative, Defendant Rinkel was acting outside the scope of his employment at all relevant times, such that Defendant Rinkel is personally liable for the damages caused to Butch.

306.     As a result of this negligence, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

307.     As a result of this negligence, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**Defendant Harrelson**

308.     Defendant Harrelson had a duty to act reasonably when encountering citizens, in an effort to prevent harm to Butch and others.

309.     On August 31, 2021, Defendant Harrleson acted unreasonably and negligently when he encountered Butch through his acts and/or omissions, including but not limited to:

    a.  The failure to provide needed medical assistance at the time and scene of Butch's arrest;

    b.  The failure to intervene to prevent the use of excessive force against Butch.

310.     As a result of Defendant Harrelson's choices and actions on August 31, 2021, Butch suffered serious injuries, including death.

311.     Defendant Harrelson was acting within the scope of his employment at all relevant times, such that Defendant Clinton is liable for the damages caused to Butch under the Oklahoma Governmental Tort Claims Act.

312.     In the alternative, Defendant Harrelson was acting outside the scope of his employment at all relevant times, such that Defendant Harrelson is personally liable for the damages caused to Butch.

313.     As a result of this negligence, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

314.     As a result of this negligence, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**Defendant Porcher**

315.     Defendant Porcher had a duty to act reasonably when encountering citizens, in an effort to prevent harm to Butch and others.

316.     On August 31, 2021, Defendant Porcher acted unreasonably and negligently when he encountered Butch through his acts and/or omissions, including but not limited to:

    a.  The use of excessive force;

    b.  The failure to provide needed medical assistance at the time and scene of Butch's arrest; and,

    c.  The failure to intervene to prevent the use of excessive force against Butch.

317.     As a result of Defendant Porcher's choices and actions on August 31, 2021, Butch suffered serious injuries, including death.

318.     Defendant Porcher was acting within the scope of his employment at all relevant times, such that Defendant Clinton is liable for the damages caused to Butch under the Oklahoma Governmental Tort Claims Act.

319.     In the alternative, Defendant Porcher was acting outside the scope of his employment at all relevant times, such that Defendant Porcher is personally liable for the damages caused to Butch.

320.     As a result of this negligence, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

321.     As a result of this negligence, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**Defendant Hulett**

322.     Defendant Hulett had a duty to act reasonably when encountering citizens, in an effort to prevent harm to Butch and others.

323.     On August 31, 2021, Defendant Hulett acted unreasonably and negligently when he encountered Butch through his acts and/or omissions, including but not limited to:

a. The use of excessive force;

b. The failure to provide needed medical assistance at the time and scene of Butch's arrest; and,

c. The failure to intervene to prevent the use of excessive force against Butch.

324.     As a result of Defendant Hulett's choices and actions on August 31, 2021, Butch suffered serious injuries, including death.

325.     Defendant Hulett was acting within the scope of his employment at all relevant times, such that Defendant Clinton is liable for the damages caused to Butch under the Oklahoma Governmental Tort Claims Act.

326.     In the alternative, Defendant Hulett was acting outside the scope of his employment at all relevant times, such that Defendant Hulett is personally liable for the damages caused to Butch.

327.     As a result of this negligence, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

328.     As a result of this negligence, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**Defendant Scott**

329.     Defendant Scott had a duty to act reasonably when encountering citizens, in an effort to prevent harm to Butch and others.

330.     On August 31, 2021, Defendant Scott acted unreasonably and negligently when he encountered Butch through his acts and/or omissions, including but not limited to:

   a.   The use of excessive force;

   b.   The failure to provide needed medical assistance at the time and scene of Butch's arrest; and,

   c.   The failure to intervene to prevent the use of excessive force against Butch.

331.     As a result of Defendant Scott's choices and actions on August 31, 2021, Butch suffered serious injuries, including death.

332.     Defendant Scott was acting within the scope of his employment at all relevant times, such that Defendant Clinton is liable for the damages caused to Butch under the Oklahoma Governmental Tort Claims Act.

333.     In the alternative, Defendant Scott was acting outside the scope of his employment at all relevant times, such that Defendant Scott is personally liable for the damages caused to Butch.

334.     As a result of this negligence, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

335.     As a result of this negligence, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**Defendant Sinor**

336.     Defendant Sinor and its employees had a duty to act reasonably for a person in their position in providing medical care to Butch at the Clinton City Jail.

337.     Defendant Sinor's employees had been present at the scene of Butch's arrest, before they were called to the jail.

338.     While Defendant Sinor's employees were present at the scene of Butch's arrest, they witnessed his deteriorating condition, including his profuse sweating, vomiting, fecal incontinence, trouble breathing, facial discoloration, and difficulty breathing.

339.     The actions of Defendant Sinor's employees at the Clinton City Jail, as set out above, constitute a breach of the duty to act reasonably in providing medical care to Butch at the Clinton City Jail.

340. As a result of the failure of Defendant Sinor's employees to exercise ordinary care in providing necessary and potentially lifesaving medical care to Butch at the Clinton City Jail, Butch suffered a loss of or decreased chance of survival, and/or death.

341. As a result of negligence of Defendant Sinor's employees at the Clinton City Jail, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

## COUNT VII: NEGLIGENT HIRING, RETENTION, TRAINING, AND/OR SUPERVISION

**City of Clinton**

342. Defendant Clinton had a duty to refrain from hiring law enforcement employees who it had reason to know posed a threat to the safety and/or constitutional rights of citizens of the City of Clinton.

343. Defendant Clinton knew or should have known of Defendant Rinkel's disregard for citizens' constitutional rights and his permissive attitude toward the use of excessive force and the denial of medical care for serious medical needs.

344. Defendant Clinton failed to properly screen, train, and supervise Defendant Rinkel in the performance of his duties and in his policymaking for law enforcement matters.

345. Defendant Clinton knew or should have known of Defendant Porcher's disposition for excessive force and violence as well as his attitude of deliberate indifference to the medical needs of arrestees within the City of Clinton.

346. Defendant Clinton had a duty to train and supervise Defendant Porcher to ensure he does not use constitutionally-impermissible excessive force and to ensure he properly provides medical care to arrestees or detainees in clear need of serious medical attention.

347.     Defendant Clinton failed to properly screen, train, and supervise Defendant Porcher as evidenced by his egregious actions and attitude throughout the arrest, detention, and last moments of the life of Butch Herndon.

348.     Defendant Clinton knew or should have known of Defendant Scott's disposition for excessive force and violence as well as his attitude of deliberate indifference to the medical needs of arrestees within the City of Clinton.

349.     Defendant Clinton had a duty to train and supervise Defendant Scott to ensure he does not use constitutionally-impermissible excessive force and to ensure he properly provides medical care to arrestees or detainees in clear need of serious medical attention.

350.     Defendant Clinton failed to properly screen, train, and supervise Defendant Scott as evidenced by his egregious actions and attitude throughout the arrest, detention, and last moments of the life of Butch Herndon.

351.     Defendant Clinton knew or should have known of Defendant Harrelson's attitude of deliberate indifference to the medical needs of arrestees within the City of Clinton.

352.     Defendant Clinton had a duty to train and supervise Defendant Harrelson to ensure he properly provides medical care to arrestees or detainees in clear need of serious medical attention.

353.     Defendant Clinton failed to properly screen, train, and supervise Defendant Harrelson as evidenced by his egregious actions and attitude throughout the arrest, detention, and last moments of the life of Butch Herndon.

354.     Defendant Clinton knew or should have known of Defendant Hulett's disposition for excessive force and violence as well as her attitude of deliberate indifference to the medical needs of arrestees within the City of Clinton.

355.     Defendant Clinton had a duty to train and supervise Defendant Hulett to ensure she does not use constitutionally-impermissible excessive force and to ensure she properly provides medical care to arrestees or detainees in clear need of serious medical attention.

356.     Defendant Clinton failed to properly screen, train, and supervise Defendant Hulett as evidenced by her egregious actions and attitude throughout the arrest, detention, and last moments of the life of Butch Herndon.

357.     As a result of this negligence, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

358.     As a result of this negligence, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**Defendant Rinkel – Official Capacity and Individually**

359.     Defendant Rinkel had a duty to refrain from hiring law enforcement employees who it had reason to know posed a threat to the safety and/or constitutional rights of citizens of the City of Clinton.

360.     Defendant Rinkel knew or should have known of Defendant Porcher's disposition for excessive force and violence as well as his attitude of deliberate indifference to the medical needs of arrestees within the City of Clinton.

361.     Defendant Rinkel had a duty to train and supervise Defendant Porcher to ensure he does not use constitutionally-impermissible excessive force and to ensure he properly provides medical care to arrestees or detainees in clear need of serious medical attention.

362.     Defendant Rinkel failed to properly screen, train, and supervise Defendant Porcher as evidenced by his egregious actions and attitude throughout the arrest, detention, and last moments of the life of Butch Herndon.

363.     Defendant Rinkel knew or should have known of Defendant Scott's disposition for excessive force and violence as well as his attitude of deliberate indifference to the medical needs of arrestees within the City of Clinton.

364.     Defendant Rinkel had a duty to train and supervise Defendant Scott to ensure he does not use constitutionally-impermissible excessive force and to ensure he properly provides medical care to arrestees or detainees in clear need of serious medical attention.

365.     Defendant Rinkel failed to properly screen, train, and supervise Defendant Scott as evidenced by his egregious actions and attitude throughout the arrest, detention, and last moments of the life of Butch Herndon.

366.     Defendant Rinkel knew or should have known of Defendant Harrelson's attitude of deliberate indifference to the medical needs of arrestees within the City of Clinton.

367.     Defendant Rinkel had a duty to train and supervise Defendant Harrelson to ensure he properly provides medical care to arrestees or detainees in clear need of serious medical attention.

368.     Defendant Rinkel failed to properly screen, train, and supervise Defendant Harrelson as evidenced by his egregious actions and attitude throughout the arrest, detention, and last moments of the life of Butch Herndon.

369.     Defendant Rinkel knew or should have known of Defendant Hulett's disposition for excessive force and violence as well as her attitude of deliberate indifference to the medical needs of arrestees within the City of Clinton.

370.     Defendant Rinkel had a duty to train and supervise Defendant Hulett to ensure she does not use constitutionally-impermissible excessive force and to ensure she properly provides medical care to arrestees or detainees in clear need of serious medical attention.

371.    Defendant Rinkel failed to properly screen, train, and supervise Defendant Hulett as evidenced by her egregious actions and attitude throughout the arrest, detention, and last moments of the life of Butch Herndon.

372.    As a result of this negligence, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

373.    As a result of this negligence, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

**Defendant Sinor**

374.    Defendant Sinor was negligent in failing to hire and employ competent medical personnel, including the employees who responded to the scene of Butch's arrest and at the Clinton City Jail.

375.    Defendant Sinor knew or should have known of their employees' carelessness, recklessness, and incompetence.

376.    Defendant Sinor negligently failed to train and supervise their employees on how to assess, diagnose, and treat patients like Butch.

377.    To the extent that Defendant Sinor may be deemed to have been acting as a state actor and under color of law in the provision of emergency medical care to Butch at the Clinton City Jail, Defendant Sinor failed to act in good faith in carrying out the duties of its employment and abused its power, while still acting under the pretense and color of state law. As such, Defendant Sinor was outside the scope of its employment/contract.

378.    As a result of this negligence, Butch suffered a loss of or decreased chance of survival, conscious physical pain and suffering, and/or death.

379.     As a result of this negligence, Butch's heirs, suffered damages including but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

## CAUSATION OF PLAINTIFF'S INJURIES AND DAMAGES

380.     Plaintiff incorporates all previous allegations and statements as if fully restated herein.

381.     The injuries and damages sustained by Butch Herndon, and his heirs, were produced in a natural and continuous sequence from Defendants' violation of one or more of the above-described independent constitutional and/or state law duties.

382.     The injuries and damages sustained by Butch Herndon, and his heirs, were a probable consequence from Defendants' violation of one or more of the above-described independent constitutional and/or state law duties.

383.     Defendants should have foreseen and anticipated that a violation of one or more of the above-described independent duties would constitute an appreciable risk of harm to others, including Butch Herndon and his heirs.

384.     If Defendants had not violated one or more of the above-described independent duties, then Butch Herndon's death and damages, and the damages of his heirs, would not have occurred.

## COMPENSATORY DAMAGES SUSTAINED BY PLAINTIFF

385.     Plaintiff incorporates all previous allegations and statements as if fully restated herein.

386.     The injuries and damages sustained by Butch Herndon as a result of the Defendants' violations of the above-described independent constitutional and/or state law duties include, but are not limited to, the following:

    c.   Butch Herndon's physical pain and suffering;

    d.   Butch Herndon's mental pain and suffering;

    e.   Butch Herndon's age;

    f.   Butch Herndon's physical condition immediately before and after the incident;

    g.   The nature and extent of Butch Herndon's injuries;

    h.   Loss of earnings;

    i.   The reasonable expenses of the necessary medical care;

387.     Plaintiff's injuries and damages include all wrongful death damages pursuant to 12 O.S. § 1053, including but not limited to: (1) medical and burial expenses; (2) loss of consortium and grief, (3) mental pain and anguish of the decedent; (4) pecuniary loss to survivors, and (5) grief and loss of companionship to children and/or parents of the decedent.

388.     Plaintiff seeks all damages available under federal and state law for the claims alleged herein.

## AMOUNT OF DAMAGES

389.     The Plaintiff's injuries and damages are in excess of $20,000,000.00, and in excess of the amount required for diversity jurisdiction under 28 U.S.C. § 1332, plus attorney fees, interest, costs and all such other and further relief which should be awarded as judgment against Defendants in an amount to fully and fairly compensate Plaintiff for each and every element of damages that has been suffered.

## PUNITIVE DAMAGES

390.     Plaintiff incorporates all previous allegations and statements as if fully restated herein.

391.     Plaintiffs are entitled to punitive damages on claims brought against individual Defendants pursuant to 42 U.S.C. § 1983 as Defendants' conduct, acts, and omissions alleged herein constitute reckless or callous indifference to Butch's federally-protected rights.

392.     Plaintiff is entitled to punitive damages on all other claims pursuant to 12 O.S. § 1053.

## DEMAND FOR JURY TRIAL

393.     Plaintiff demands a jury trial for all issues of fact presented by this action.

## RESERVATION OF ADDITIONAL CLAIMS

394.     Plaintiff reserves the right to plead further upon completion of discovery to state additional claims and to name additional parties to this action.

395.     WHEREFORE, Plaintiff prays for judgment against Defendants in a sum in excess of $20,000,000.00, and in excess of the amount required for diversity jurisdiction under 28 U.S.C. § 1332, plus attorney fees, interest, costs and all such other and further relief which should be awarded as judgment against Defendants in an amount to fully and fairly compensate Plaintiff for each and every element of damages that has been suffered.

**Respectfully Submitted,**

**Laird Hammons Laird, PLLC**

s/ *Jonathan R. Ortwein*
Chris Hammons, OBA #20233
Jason M. Hicks, OBA #22176
Jonathan Ortwein, OBA #32092
1332 S.W. 89th Street
Oklahoma City, OK 73159
Telephone: 405.703.4567
Facsimile:  405.703.4067
E-mail:   chris@lhllaw.com
          jason@lhllaw.com
          jonathan@lhllaw.com
*Attorneys for Plaintiffs*