# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IMOGENE HERNDON, as Special Administrator of the Estate of Butch Thomas Herndon, deceased, <br><br> Plaintiff, <br><br> -vs- <br><br> CITY OF CLINTON, OKLAHOMA, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) Case No. CIV-23-86-F ) ) ) ) ) |

## ORDER

Defendants City of Clinton, Oklahoma (the City), Paul Rinkel (Rinkel), individually and in his official capacity as Chief of Police for the City, Shane Harrelson (Harrelson), Peter Porcher (Porcher), Lacey Hulett (Hulett), and Carter Scott (Scott),[1] have moved, pursuant to Rule 12(b)(1), Fed. R. Civ. P., and Rule 12(b)(6), Fed. R. Civ. P., to dismiss certain claims alleged against them in the Second Amended Complaint (Complaint). *See*, doc. no. 52. Plaintiff Imogene Herndon, as Special Administrator for the Estate of Butch Thomas Herndon, deceased, has responded, opposing in part the requested relief. *See*, doc. no. 53. Defendants have replied. *See*, doc. no. 56. The matter is at issue.

Background

On August 31, 2021, Butch Herndon was arrested by the Clinton Police Department for public intoxication and died later that day at the Clinton City Jail. Plaintiff filed this action against the City, Rinkel, Harrelson, Porcher, Hulett, and

---

[1] Harrelson, Porcher, Hulett, and Scott are employed by the City as police officers.

Scott, seeking damages under 42 U.S.C. § 1983.  Plaintiff claims that Porcher, Hulett, and Scott subjected Mr. Herndon to the use of excessive force after he was handcuffed,[2] and that Rinkel, individually, and Harrelson failed to take reasonable steps to prevent or stop the use of excessive force.  Plaintiff also claims that Rinkel, individually, and Harrelson, Porcher, Hulett, and Scott were deliberately indifferent to Mr. Herndon exhibiting obvious, serious signs of a drug overdose or severe physical illness, resulting in his loss of or decreased chance of survival, conscious physical pain and suffering, and his death.  Plaintiff further claims the City and Rinkel, in his official capacity, are liable under § 1983 based on alleged deliberately indifferent policies, practices, and customs, including inadequate training and supervision, and that Rinkel, individually, is liable under § 1983 based on alleged supervisory liability.

In addition to the § 1983 claims, plaintiff alleges claims under Oklahoma law against the City and Rinkel, individually and in his official capacity, for negligent

---

[2] According to the Complaint, after Mr. Herndon was placed into the backseat of the patrol car, Porcher pulled him out and threw him to the ground.  Despite being handcuffed, Porcher and Scott alternated between slamming Mr. Herndon to the ground, pulling him back up to sit up, and pushing him down on the ground with knees and bodyweight on his neck, back, legs and side, while Mr. Herndon was vomiting, struggling to breathe, and having fecal incontinence.  This went on for approximately 15 minutes.  Hulett also repeatedly stood on Mr. Herndon's legs while he was in the prone position with a knee to his back or neck.  After EMTs arrived and attempted to take Mr. Herndon's vital signs, Scott slammed Mr. Herndon down to the ground and pushed his head down into the grass, while also putting his knee and bodyweight on Mr. Herndon's upper back.  Hulett and Porcher stood on Mr. Herndon's legs.  After Mr. Herndon was set up, Scott pushed his head forward and down a couple of times, pushed his head down into his lap, and then slammed his face down into the grass and placed his knee and bodyweight on Mr. Herndon's back and neck.  Porcher and Scott continued to hold Mr. Herndon down with their bodyweight on him.  During a vomiting episode, Scott continued to push Mr. Herndon down to the ground with his knee on Mr. Herndon's back and his hands on Mr. Herndon's shoulder.  At one point, Scott threw Mr. Herndon down on the hot asphalt road, with Porcher warning him not to bust his head open on the pavement.  Scott continued to hold Mr. Herndon's face down on the extremely hot pavement. *See*, doc. no. 43, ¶¶ 38, 40-44, 46-47, 59, 65, 70, 71, 72, 73, 75, 76, 83, 85, 88, 89, 90, and 91.

hiring, retention, training, and supervision, and against the City, Rinkel, individually, Harrelson, Porcher, Hulett, and Scott, for negligence.

Official Capacity Claims

Plaintiff has sued Rinkel in his official capacity with respect to the § 1983 claims. *See*, doc. no. 43, (Count IV), ¶¶ 255-299. Relying upon Kentucky v. Graham, 473 U.S. 159 (1985),[3] defendants seek to dismiss the official capacity claims as redundant to the § 1983 claims against the City. Plaintiff states in response that she "dismisses the claims against Paul Rinkel, in his official capacity only, and maintains her claims against the City of Clinton." Doc. no. 53, ECF p. 5. Because plaintiff does not oppose dismissal of the § 1983 claims alleged against Rinkel in his official capacity, the court will grant defendants' motion, and dismiss with prejudice, under Rule 12(b)(6), plaintiff's § 1983 claims alleged against Rinkel in his official capacity.

Negligent Hiring/Training Claims

Next, plaintiff has sued the City and Rinkel in his official capacity under Oklahoma law, for negligent hiring, retention, training, and supervision. *See*, doc. no. 43, (Count VII), ¶¶ 390-421.[4] Defendants seek to dismiss that claim, referred to as "negligent hiring/training claim," as barred by Oklahoma's Governmental Tort Claims Act (GTCA), 51 O.S. § 151, *et seq*., because the GTCA exempts, from the waiver of sovereign immunity, claims arising from the "[p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees." 51 O.S. § 155(5). Defendants state that

---

[3] "Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky, 473 U.S. at 165 (quotation marks and citation omitted).

[4] A tort claim brought against an employee is his official capacity under the GTCA is an attempt to impose liability upon the governmental entity. Pellegrino v. State ex rel. Cameron University ex rel. Board of Regents of State of Oklahoma, 63 P.3d 535, 537 (Okla. 2003).

"claims of inadequate hiring, training, supervision, monitoring, and retention are actions that implicate a political entity's policy and planning functions and therefore fall under the discretionary function exemption." Doc. no. 52, ECF p. 6. Plaintiff in response states she "dismisses only the negligent hiring/training claim[s] against Defendants Rinkel and the City of Clinton." Doc. no. 53, ECF p. 5. As plaintiff does not oppose dismissal of the negligent hiring/training claim against the City and Rinkel, the court will grant defendants' motion, and dismiss without prejudice, under Rule 12(b)(1), the negligent hiring/training claim alleged against the City and Rinkel in his official capacity.

The court notes that plaintiff has also sued Rinkel, individually, in Count VII. *See*, doc. no. 43 (Count VII), ¶¶ 407-421. However, given defendants' argument in their motion related to the governmental entity,[5] the court construes defendants' motion as only challenging the negligent hiring/training claim against Rinkel in his official capacity. Because defendants have not specifically challenged that claim with respect to Rinkel, individually, the court concludes that the claim remains. Defendants may challenge that claim at the summary judgment stage.

<u>Negligence Claims</u>

Lastly, plaintiff has sued Rinkel, individually, Harrelson, Porcher, Hulett, and Scott, for negligence. *See*, doc. no. 43, (Count VI), ¶¶ 328-363. Defendants seek dismissal of the negligence claims, arguing they are immune from suit because the Complaint's allegations fail to show they were acting outside the scope of their employment. According to defendants, "misconduct through an abuse of an officer's lawful power is not outside the scope of employment; only acts that are said to exceed what an officer is empowered to do under the banner of government occur outside the scope of the officer's employment." Doc. no. 52, ECF p. 7 (citing

---

[5] *See*, doc. no. 52, ECF pp. 5-6.

4

DeCorte v. Robinson, 969 P.2d 358, 361-62 (Okla. 1998), and McGhee v. Volusia County, 679 So.2d 729, 733 (Fla. 1996)).  The Complaint's allegations, defendants maintain, do not show that they took any action that was not within their lawful power as law enforcement officers.  Even if the allegations, viewed in plaintiff's favor, show that the individual defendants acted wrongfully, defendants contend that they only show that they abused their lawful power, not that they transcended their roles as law enforcement officers.

The GTCA "makes a distinction between a government employee acting within the scope of employment and one who was not." Pellogrino, 63 P.3d at 537 (citations omitted).  "A government employee acting within the scope of employment is relieved from private (individual) liability for tortious conduct, but when an employee acts outside the scope of employment the political subdivision is relieved from liability." Id. "The concept of scope of employment is thus tied to whether the employee or the government entity may be liable for a particular act." Id.

"Scope of employment" is defined (rather awkwardly) as "performance by an employee acting in good faith within the duties of the employee's office or employment[,] or of tasks lawfully assigned by competent authority[.]"  51 O.S. § 152(12).  The Oklahoma Supreme Court has determined that an act of the employee is not within the scope of employment if the employee acted maliciously or in bad faith.  Nail v. City of Henryetta, 911 P.2d 914, 916 (Okla. 1996).  However, it has also stated that in the context of law enforcement, "liability exists for acts of officers that can be described as abuses of lawful power.  The employing agency is immune as a matter of law only if the acts are so extreme as to constitute a clearly unlawful

usurpation of authority the [officer] does not rightfully possess[.]" DeCorte, 969 P.2d at 361-62 (quoting McGhee, 679 So.2d at 733).[6]

Although defendants contend that the Complaint's allegations only show abuses of lawful power by the individual defendants rather than acts constituting usurpation of authority, the court cannot conclude, as a matter of law, that the acts alleged by plaintiff only show abuses of lawful power. In DeCorte, applying the abuse/usurpation test to the case, the Oklahoma Supreme Court concluded that a jury could have found that the police officer's initial actions in pursuing and arresting a speeding driver were within the scope of employment, but that his later actions, which included an assault and battery of the driver, exceeded that scope. DeCorte, 969 P.2d at 362. And in Tuffy's, Inc. v. City of Oklahoma City, 212 P.3d 1158, 1167 (Okla. 2009), the Oklahoma Supreme Court, acknowledging the abuse/usurpation test, found a jury question as to whether the police officers, when removing customers from a nightclub, were acting within the scope of their employment. According to the Court, "[w[hether a police officer's actions were taken within the scope of employment is a jury question unless only one reasonable conclusion can be drawn from the acts alleged." *Id*. Here, the court cannot say that there is only one reasonable conclusion to be drawn from the acts alleged in the Complaint.

Conclusion

Accordingly, the Joint Partial Motion to Dismiss of Defendants City of Clinton, Paul Rinkel, Shane Harrelson, Peter Porcher, Lacey Hulett, and Carter Scott (doc. no. 52) is **GRANTED in part** and **DENIED in part**.

---

[6] The prescribed differentiation between (i) abuse of lawful power, and (ii) clearly unlawful usurpation of authority, is an elusive distinction if there ever was one.

Plaintiff's § 1983 claims against Paul Rinkel, in his official capacity as Chief of Police for the City of Clinton, Oklahoma, are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6), Fed. R. Civ. P.  Plaintiff's negligent hiring/training claim alleged in Count VII against the City of Clinton and Rinkel, in his official capacity as Chief of Police for the City of Clinton, Oklahoma, is **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(1), Fed. R. Civ. P.  All other challenged claims remain pending.

DATED this 14th day of August, 2023.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

23-0086p007.rev.docx